NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 20, 2011[*]
Decided October 21, 2011

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 10-3537 | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| JAMES E. GILMAN, *Plaintiff-Appellant,* | |
| *v.* | No. 07-cv-0161 |
| ELTON AMOS, et al., *Defendants-Appellees.* | Larry J. McKinney, *Judge.* |

**ORDER**

Indiana prisoner James Gilman appeals the grant of summary judgment for medical and administrative personnel at his prison as well as the Indiana Department of Correction (DOC) in his action under 42 U.S.C. § 1983, claiming deliberate indifference to his arthritis and painful knee condition. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Gilman filed a § 1983 complaint claiming that personnel at the Wabash Valley Correctional Facility and DOC subjected him to cruel and unusual punishment by delaying treatment for pain and swelling he suffered as a result of his arthritis, loss of cartilage in his knees, and torn knee ligaments. Gilman alleged that nursing staff significantly delayed (or denied) the delivery of ibuprofen and knee braces that physicians had prescribed him in order to mitigate the pain and swelling in his knees. He alleged that a certain Nurse Obermeyer, in particular, overruled physicians' orders when she instructed him to buy ibuprofen from the prison commissary instead of refilling his prescription.

After further proceedings in which the court denied Gilman's motion to amend his complaint to add new claims and defendants, Gilman presented evidence that the delivery of his prescription ibuprofen was often delayed for weeks. He also presented evidence that it sometimes took months to receive new knee braces.

As to the named defendants, Gilman introduced the following evidence of their involvement in his care. Brenda Barnard, an administrative assistant at the prison, helped a physician prepare a summary of the interactions between Gilman and prison medical staff for one of his grievances, and contacted a knee brace company to ask about the status of an order for knee braces for Gilman. Nurse Kim Gray made a notation in Gilman's records that she would schedule him to see a doctor, as he requested. Nurse Marnie Obermeyer authorized him to sleep on the lower bunk approximately one month after he requested a lower bunk pass; she also referred him to the commissary for ibuprofen after consulting with a doctor; she delivered knee braces that a doctor had prescribed and ordered for him about two months earlier; she referred to the pharmacy a complaint from Gilman about not receiving his prescription; and she referred Gilman's request for new knee braces to a doctor. Gilman did not provide any evidence that Dr. Elton Amos, Medical Director at DOC, participated in his care or responded to his grievances.

The district court then granted defendants' motion for summary judgment. It explained that there was no evidence to demonstrate that the defendants were deliberately indifferent to Gilman's serious medical needs. First, the court noted that no evidence showed Amos's participation in any of Gilman's grievances. Second, the court explained that Barnard was not involved in Gilman's medical care, and to the extent she prepared a summary for the grievance process, she was entitled to defer to the professional judgment of the doctor at whose direction she was working. Third, the court concluded that no evidence showed that Gray delayed providing care to Gilman, and she could not be held responsible for actions of employees she supervised. Fourth, the court concluded that although Obermeyer did help care for Gilman, she did not deny him the care he needed or otherwise ignore a large risk to his health.

On appeal Gilman challenges the district court's conclusion that the defendants did not deliberately disregard his serious medical needs. Gilman asserts that the following evidence reflects the defendants' deliberate indifference: the records show that the delivery of pain medication and knee braces were often delayed; that Obermeyer's and Barnard's names appear several times in his medical records; that his grievances were handled by the office of the Medical Director (Amos); and that Gray, as a nurse supervisor, was responsible for the nurses below her.

The district court correctly determined that Gilman failed to adduce evidence of deliberate indifference on the part of any of the defendants. To make out a claim of cruel and unusual punishment, Gilman had to show that each official was personally deliberately indifferent to an objectively serious risk of harm. *Ashcroft*, 129 S. Ct. 1937, 1948 (2009); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). First, with regard to Amos, Gilman presented no evidence to show that Amos was personally involved in his care. As the DOC Medical Director, Amos did not personally provide care to prisoners. And though he did participate in the grievance process, there is no evidence that Amos addressed any of Gilman's grievances: two of Gilman's grievances were resolved before Amos became Medical Director in 2005, and there is no suggestion that Amos participated in the other two. As for administrative assistant Barnard, nothing in the record reflects any awareness on her part that Gilman was being mistreated by prison medical staff in any way. *See Arnett v. Webster*, No. 09-3280, 2011 U.S. App. LEXIS 18812, *32–33 (7th Cir. Sept. 12, 2011). Finally, regarding Gray and Obermeyer, nothing in the record suggests that either nurse was anything less than attentive to Gilman's condition. Summary judgment was properly granted.

Gilman next argues that the district court erred in denying a motion he filed earlier in the proceedings to amend his complaint and join additional defendants. The district court denied Gilman's motion because it concluded that he could not state a viable claim against any of the defendants Gilman proposed to adjoin: the claim against Dr. Rieger, a DOC administrator who participated in one of Gilman's grievances, was time-barred, and the claims against the other proposed defendants did not allege deliberate indifference. Gilman now asserts that he included in his motion the dates that these nurses provided care to him, and seems to argue that this timeline suffices to state a claim of deliberate indifference.

The district court did not abuse its discretion in denying the motion to amend. A court should freely grant leave to file an amended complaint, *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007), but a court may refuse to do so where amendment would be futile, such as where a proposed amended complaint could not

survive a motion to dismiss. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). The court here properly concluded that joining Rieger would be futile, because the claim against him was time-barred: Gilman asserted that Rieger was deliberately indifferent for actions he took in March 2004 but did not seek to join Rieger until June 2008—well beyond the two-year statute of limitations in Indiana for personal injury actions. *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007); IND. CODE § 34-11-2-4. The court also properly rejected Gilman's request to join the remaining defendants as futile: Gilman did not allege deliberate indifference on the part of nurse Bloomquist (Gilman identifies her as a Health Services Administrator) in failing to follow a doctor's orders, and did not allege deliberate indifference on the part of twelve other nurses, or Medical Assistant Volle, who were also proposed as defendants.

Gilman next argues that the court abused its discretion in refusing to appoint a handwriting expert, who he believed could help prove that several signatures on documents in his medical records were forged. As the court explained, however, Gilman failed to show that a handwriting expert was necessary to establish his case. A court does not abuse its discretion by declining to appoint an expert if the moving party has not shown that the expert is necessary to prove its case. *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997).

Gilman also argues that the court abused its discretion by refusing to order a medical exam, which, he believes, would have revealed the sort of treatment necessary for his ailments. The district court did not explain the basis for denying the request, but here too Gilman did not show that any medical expert was necessary. Indeed the defendants did not contest the seriousness of Gilman's condition, and the court did not need an expert to understand the consequences of a delay in treatment, as opposed to a misdiagnosis or an error in the prescribed treatment. *See Gipson v. United States*, 631 F.3d 448, 452 (7th Cir. 2011); *Ledford*, 105 F.3d at 360.

Next, Gilman challenges the district court's denial of his request, issued after the denial of his motion to amend, for additional access to the law library. The court denied the request because Gilman had not shown that the limited time he was allowed in the library was unreasonable, and it stated that Gilman could seek extensions from the court if necessary to meet deadlines. Gilman argues that the denial denied him meaningful access to the courts, because the 1.75–3.5 hours he was allowed each week in the library was insufficient to carry out discovery or other case matters. But Gilman failed to show that he suffered any actual injury so as to deny him meaningful access to the courts. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *see also Campbell v. Clarke*, 481 F.3d 967, 968 (7th

Cir. 2007) (prisoner must allege that lack of access to courts frustrated concrete piece of litigation).

Last, Gilman argues that the district court erred in denying his request at summary judgment to have counsel recruited for him. The district court denied this motion because it thought that Gilman's comprehensible filings demonstrated his competency to represent himself. Although a court in its discretion may recruit pro bono counsel, a civil litigant has no constitutional right to counsel. 28 U.S.C. § 1915(e)(1); *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997). Here, the court properly exercised its discretion to find Gilman competent to litigate the case on his own; as the court observed, Gilman's filings were intelligible and demonstrated an adequate understanding of the facts of the case and the law. *See Pruitt v. Mote*, 503 F.3d 647, 654–655 (7th Cir. 2007) (en banc).

We **AFFIRM** the judgment of the district court.